UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN PADILLA,

    Plaintiff,

-vs-                                        Case No: 1:07-cv-03638-PKL

MAERSK LINE, LTD.,

    Defendant.
_____/

**MEMORANDUM IN SUPPORT OF**
**MOTION TO COMPEL PAYMENT OF OVERTIME RE: UNEARNED WAGES**

1

## STATEMENT OF FACTS

On March 9, 2007, the undersigned wrote Defendant seeking Plaintiff's overtime waged in the following language:

> "To Whom This May Concern:
> The undersigned represents John Padilla with regard to injuries sustained on or about November 4, 2006 whereafter he lost work for an appreciable period of time because of the hernia sustained. Although he was paid a portion of the unearned wages to which he was entitled, it was not at the rate that went into effect on 7/1/06, $3,051.76, and, he was not paid his overtime. Demand is heretofore made for said deficiencies voluntarily to be provided this writer at your earliest convenience for provision to Mr. Padilla. (Exhibit 1a)

On March 28, 2007, the undersigned followed-up with a fax to Defendant's claims person stating as follows:

> "Dear Ms. Burger:
> Overtime pay owing to Mr. Padilla calculates approximately as follows:
> 
> | | |
> |---|---|
> | 11/7 - 11/30 | 136 hours |
> | 12/1 - 12/31 | 181 hours |
> | 1/1 - 1/31 | 173 hours |
> | 2/1 - 2/26 | 150 hours |
> | **TOTAL** | **640 hours @ $21.06 =   $13,478.40** |
> 
> He is set to be evicted next week. Even partial payment at this time would be greatly appreciated." (Exhibit 1b)

On March 30, 2007, the undersigned again faxed Ms. Burger stating as follows:

> "Pursuant to your request, attached please find a copy of the Lamont v United States, 613 F.Supp. 588 (S.D. N.Y. 1985) case which, like many others that have addressed the issue, holds that overtime wages are payable as unearned wages.
>
> I do realize, however, that this authority, as you said, does not mean that you will pay the overtime wages. I would like to bring

> to your attention, however, that vacation pay contributions are also payable. And for that proposition you can look at Lipscomb v Foss Maritime Co., 83 F.3rd 1106 (9th Cir. 1996).
>
> But, from your tone of voice, I don't expect you to do much of anything at this point but if you do we will be very grateful."
> (Exhibit 1c).

In an Affidavit dated February 25, 2008, Plaintiff detailed the overtime he performed as follows:

> "1. Attached hereto is the 2006 Standard Freightship Agreement governing my employment with Maersk Line, Ltd. as a chief cook.
> 2. On a weekly basis, I was scheduled to perform three hours overtime on Monday through Friday.
> 3. On Saturday's and Sunday's, I would perform 11 hours overtime on each day, as I would on holidays.
> 4. My overtime rate from July 1, 2006 and July 1, 2007 was $21.06 an hour."
> (Exhibit 2).

Defendant cross-examined Plaintiff re: overtime at his deposition on March 26, 2008; he testified to the following pertinent matters:

| Page | Testimony summary |
|---|---|
| 26 | Chief cook |
| 28 | Taking on stores is overtime work. If a steward needs help, he calls up the chief cook and the BR. |
| 29 | He works 6:30-9:30; 10:30-12:30; 4-6:30. 9:30-10:30 is coffee break. Plaintiff works overtime three hours per day M-F, and 11 hours Saturday and 11 hours Sunday. |
| 30 | Plaintiff works three hours per day overtime, Sat./Sun. 11 hours plus holidays. |
| 32 | Exhibit 2 is a Union Contract for 2006. |
| 33 | Exhibit 4 is Plaintiff's overtime sheet - 2 pages. Page 2 indicates he worked 34 hours x $21.06 per hour for a total of $716.04. Exhibit 2 indicates the rate for a chief cook to be $21.06 per hour (p.9) |
| 35 | Plaintiff testified one flat rate is paid whether regular or overtime - $21.06 per hour. |
| 38-39 | M-F gets day rate plus three hours overtime. Sat/Sun. He gets day rate plus overtime. He gets paid day rate on Sat/Sun. Plus 11 hours overtime. |
| 40 | 2006 Agreement (Exhibit 2 at p.50) indicates chief cook is paid $3,051.76 |

|  |  |
|---|---|
|  | a month regular wages without overtime. Plaintiff testified the whole steward's departments gets overtime. Contract states work hours are 6:30-9:30 a.m; 10:30 a.m. - 1:00 p.m.; and 4:00 -6:30 p.m. |
| 41 | Plaintiff testified that he never turned overtime down. |
| 63 | Maersk Line paid unearned wages but no overtime. Carol Burger said no overtime pay. She told him that they did not pay overtime. Plaintiff testified that when he got first check for unearned ages, he called Carol. |
| 85 | Plaintiff testified he got hurt after lunch working the stores on overtime. |
| 91 | Plaintiff states that you cannot do overtime unless Master approves. |
| 91-92 | Automatic or mandatory overtime - in the galley which is his job, overtime is to keep the galley clean. Three hours per day. |
| 93 | Inventory for steward is overtime. Cleaning galley after working hours is overtime for him. Sougee the galley and cleaning the grill. |
| 94 | Stores are overtime, sougeeing is overtime. |
| 95-96 | Maersk Arkansas - normal overtime was three hours per day, 11 hours Sundays, Sundays and holidays (appears to be typo and should have been Saturday). |
| 118 | Kevin Colon was captain. Everybody gets overtime. Can't call one guy out and not the others, otherwise discrimination (steward and BR get overtime also). |
| 120 | When get unearned wages, get credit for vacation. |
| 122 | Exhibit 8: Letter Carol Burger re: unearned wages. 34 days January 24-February 26. (Exhibit 3) |

## **LAW**

The inadequate payment of maintenance and cure, of which unearned wages is a part, is subject to motion practice. See Clifford v Mt. Vernon Barge Service, Inc., 127 F.Supp.2d 1055 (S.D. Ind. 1999), Miller v Canal Barge, 2001 AMC 528 (E.D. La. 2000), Ray v Jantran, Inc., 2001 AMC 1081 (E.D. Ark. 2001). A seaman seeking maintenance and cure via motion "cannot be considered in the same procedural posture as a party seeking summary judgment." Sefcik v Ocean Pride Alaska, Inc., 844 F.Supp. 1372 (D. Alaska 1993). "Applying a summary judgment standard to the payment of maintenance and cure would invite litigation and cause delays . . . thus undermining the policy of simplicity in these matters." Boyden v American Seafoods Co., 2000 AMC 1512, 1514 (W.D. Wash. 2000); Connors v Iqueque U.S.L.L.C., 2005 WL 2206922 (W.D.

Wash.); Ward v Icicle Seafoods, Inc., 2006 WL 2165755 (W.D. Wash.).The Court in Hughes v Hunter Marine Transport, Inc., 1998 AMC 6 (M.D. Tenn. 1997) reasoned that albeit factual issues existed, "[g]iven that maintenance and cure have few exceptions to cause delay or invite litigation, and that all ambiguities are to be resolved in favor of the seamen", relief on the seaman's behalf was granted. Id. at 8; Durfor v K-Sea Transportation Corp., supra; Seri v Queen of Hearts Cruise, Inc., 2003 WL 21835736 (S.D. N.Y.).

In the alternative, however, Plaintiff acknowledges that otherwise a summary judgment standard would apply. Celotex Corp. v Catrett, 477 U.S. 317, 324 (1986).

A seaman's entitlement to maintenance and cure was outlined by this court in Samaroo v Chandris, Inc., 1992 WL 183789 *5-6 (S.D. N.Y.), to wit:

> "A seaman is entitled to look to his ship operator for maintenance and cure following any injury incurred while in the ship operator's employ. The actual cause of the seaman's injury is irrelevant to his right to maintenance and cure. This obligation to furnish maintenance and cure continues until the seaman fully recovers. Rodriguez Alvarex v Bahama Cruise Line, Inc., 898 F.2d 312, 314-15 (2d Cir. 1990)(citations omitted); accord Staffer v Bouchard Transportation Co., 878 F.2d 638, 644 (2d Cir. 1989) ('Maintenance and cure . . . gives to a seaman, injured in the service of a ship, wages to the end of the voyage as well as subsistence, lodging and care to the point where the maximum cure attainable has been reached.') The goal of maintenance and cure is 'the protection of seamen who as a class, are poor, friendless and improvident, from the hazards of illness and abandonment while ill in foreign ports [and] the inducement to masters and owners to protect the safety and health of seamen while in service.' Calmar Steamship Corp. v Taylor, 303 U.S. 525, 528 (1938). The duty to provide maintenance and cure continues until the seaman's injuries are cured or until the illness is declared to be permanent. See Vella v Ford Motor Co., 421 U.S. 1, 4-5 (1975).
>
> Plaintiff bears the burden of proof on the issue of maintenance and cure. See Malm v United States Lins Co., 269 F.Supp. 731, 732 (S.D. N.Y.)(Weingfeld, J.) aff'd 378 F.2d 941 (2d Cir. 1967). The

existence of injuries and the point at which the maximum degree of cure has been reached is a question of fact to be determined by the fact-finder. See Gillikin v United States, 764 F.Supp. 261, 268 (E.D. N.Y. 1991) (citing Thomas v Diamond M Drilling Col., 569 F.2d 926, 928 (5th Cir. 1978)). 'Admiralty courts have been liberal in interpreting [the duty of maintenance and cure] . . . . When there are ambiguities or doubts, they are resolved in favor of the seaman.' Vaughan v Atkinson, 369 U.S. 527, 53 (1962). For example, in making determinations with respect to maintenance, the 'burden is 'featherweight';' [however], the plaintiff must provide the court with an evidentiary basis for an award.' Gillikin, supra, 764 F.Supp. at 267 (quoting Yelverton v Mobile Laboratories, Inc., 782 F.2d 555, 558 (5th Cir. 1986))."

"In addition to maintenance, an injured seaman is entitled to receive unearned wages until the scheduled end of his or her voyage or term of employment." McMillan v Tug Jane A. Bouchard, 885 F.Supp. 452, 460 n.9 (E.D. N.Y. 1995) citing McManus v Marine Transp. Lines, Inc., 149 F.2d 969 (2d Cir), cert. denied, 326 U.S. 773, 66 S.Ct. 231, 90 L.Ed. 467 (1945).

The court, in Lamont v United States, 613 F.Supp. 588, 592-593 (S.D. N.Y. 1985), said it well, in outlining the right to overtime as part of the unearned wage component of maintenance and cure, to wit:

> "B. 'Overtime'
> Defendant contests plaintiff's demand that 'overtime' be included in the computation of his unearned wages. The parties have stipulated that average 'overtime' earnings for a seaman such as plaintiff aboard the Atlantic was 91.33 percent of base wages, or $1,385.41 per month from September 2, 2980 to December 15, 1980 and the voyage's conclusion. See Stipulation of Facts 11. Thus, much of the total income earned by a seaman on the Atlantic was 'overtime' compensation. In light of the apparent custom and practice in this case of the seamen working a substantial amount of 'overtime,' I conclude that Lamont is entitled to recover, in full, the compensation that he would have earned but for his illness or injury as such an assessment can be made without speculation. Cf. Burke v Mathiasen's Tanker Industries, Inc., 393 F.Supp. 790, 794 (E.D. Pa. 1975)(held that seaman was not entitled to extra days for

6

months containing 31 days where it was customary to pay seamen on a monthly bases); Robinson v Pochontas, Inc., 477 F.2d 1048, 1050 (1st Cir. 1973)(plaintiff was entitled to payment through end of fishing season).

In ancient times the free men working on the galleys (generally the officers) would share in the fortunes of the ship. If the ship were lost they would receive little or nothing for their work. If the market turned against the shipowner, again their pay would reflect that fact. And, if they voyage were successful, the free men would share in the profits. Under English law in the days of wooden ships, the sailor received not only his pay but a portion of any prize money earned by the ship.

The whaling vessels sailing from our own New England ports paid the sailors not only wages, but a portion above that where the voyage was a success. These monies became part of the expectation of the sailor when signing articles. And the payment of unearned wages to an ill or injured seaman includes the full amount reasonably expected by the parties to be paid during the voyage.

In modern days this reasonable expectation includes 'overtime.' The normal work day on board ship is not the '9 to 5 existence' of the land-locked employee. The life of the seamen is dependent on his ship and the welfare of the ship is dependent on the seaman. What chaos would result if the order 'All hand to duty stations" were considered merely an invitation to work 'overtime.'

The expectation of 'overtime' amounting to almost 100 percent of the base rate has led the parties to the major collective bargaining contracts covering American seamen to provide that generally sailors will be aboard ship only six months out of each year. This is done because it is the common expectations of the parties that seaman will be able to earn the annual base income when 'overtime' is included in the six months pay. I must conclude therefore that the unearned wages due to the seaman who becomes ill or injured aboard ship includes the 'overtime' pay reasonably expected by the parties to be paid during the voyage. Defendant has cited no definitive case law and has presented no compelling arguments why 'overtime' wages should be excluded here. Fn3. Thus, plaintiff may recover 'overtime' earnings for the period from September 13, 1980 through April 19, 1981.

> Fn3. The authority cited by defendant does not address the issue of whether an injured seaman is entitled to 'overtime' as part of his unearned wages, see, e.g. Martinez v Star Fisheries and Oyster Co., Inc., 386 F.Supp. 560, 564 (S.D. Ala. 1974); M. Norris, The Law of Seamen §544 at 16 n.17 (3d ed 1970). Moreover, in Gajewski v United States , 540 F.Supp. 381, 386 (S.D. N.Y. 1982), I held merely that the plaintiff could not contend, on the one hand, that 'overtime' violated the Jones Act and, on the other hand claim 'overtime' as due and owing under his wage claim. This case is distinguishable."

Lamont was cited with approval and relied on by the Ninth Circuit in Lipscomb v Foss Maritime Co., 83 F.3d 1106, 1109 (9th Cir. 1996).

Plaintiff calculates that he is owed three (3) hours of overtime per weekday and eleven (11) hours overtime per weekend and holidays, which breakdown in this instance as follows:

| DATE | WEEKDAYS | WEEKENDS/HOLIDAYS |
|---|---|---|
| 11/7-11/30/06 | 17 | 7 |
| 12/1-12/31/06 | 20 | 11 |
| 1/1-1/31/07 | 22 | 9 |
| 2/1-2/26/07 | 18 | 8 |
| **TOTALS** | **77 weekdays** | **35 weekends/holidays** |

77 x 3 hours = 231 hours overtime for weekdays

35 x 11 hours = 385 hours overtime for weekends and holidays

Overtime rate: $21.06/hour

231 hours x $21.06 = $ 4,864.86

385 hours x $21.06 = $ 8,108.10

Total ...................... $12,972.96

    Plaintiff anticipates Defendant will dispute the above calculation.

    In the alternative, however, a bullet proof way to calculate the amount of overtime that Plaintiff is owed, would be for Defendant to be ordered to answer the attached interrogatory (Exhibit 4) that was dated January 7, 2008, for the balance of the contract in effect when Plaintiff left the vessel unfit for duty, to wit:

> "State the amount of wages paid Plaintiff's replacement man during Plaintiff's period of unfitness for duty, including but not limited to, itemized dates of payment of regular pay, and overtime pay."

                                                    O'BRYAN BAUN COHEN KUEBLER KARAMANIAN

/s/ Dennis M. O'Bryan

_____

Dennis M. O'Bryan
Attorney for Plaintiff
401 S. Old Woodward, Ste. 450
Birmingham, MI 48009
(248) 258-6262
(248) 258-6047
dob@obryanlaw.net

DATED: May 13, 2008

## CERTIFICATE OF SERVICE

    The undersigned does hereby certify that on the 13th day of May, 2008 the foregoing was filed through the Court's ECF Filing System and will be served on all parties through the Court's ECF system.

                                                   /s/ Dennis M. O'Bryan
                                                   _____