# EXHIBIT "2"

512-07/JJW

FREEHILL HOGAN & MAHAR, LLP
Attorneys for Defendant
MAERSK LINE LIMITED
80 Pine Street
New York, New York 10005
(212) 425-1900

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JOHN PADILLA,                                           Case No.: 1:07-CV-03638-PKL

                            Plaintiff,

        - against -                                     **DECLARATION OF CAROL
                                                        BERGER PURSUANT
                                                        TO 28 U.S.C. §1746**

MAERSK LINE, LIMITED. and/or
UNITED STATES,

                            Defendants.
------------------------------------------------------------x

**CAROL BERGER**, declares under penalty of perjury under the laws of the United States of America that the following is true and correct:

1.      I am the General Manager, Quality, Environment, Safety and Security for MAERSK LINE, LIMITED, the owner of the M/V MAERSK ARKANSAS the United States Flag Ship on which John Padilla was employed in November, 2006. I handled the within claim by John Padilla to recover overtime wages in addition to the unearned wages he had already been paid.

NYDOCS1/303652.1

Page 2

2. I was in charge of Mr. Padilla's claim, when he was repatriated from the MAERSK ARKANSAS. At that time, I was a claims manager for MAERSK LINE LIMITED in Norfolk, Virginia. I handled Mr. Padilla's claim in accordance with the long standing policies of MAERSK LINE LIMITED and in accordance with the applicable Collective Bargaining Agreement known as the Standard Freightship Agreement to which MAERSK LINE LIMITED and Mr. Padilla's union, the Seafarers International Union, are parties.

3. I have been managing Jones Act Claims for seven (7) years, first with U.S. Ship Management, Inc. and then with Maersk Line Limited. It is my understanding that when a Jones Act Seaman is injured or becomes ill while in the service of the ship he is entitled to maintenance which is a daily subsistence rate governed by the Standard Freightship Agreement and to cure which is payment of the medical expenses related to the injury or illness which is payable to the point that the seaman reaches maximum medical cure.

4. It is also my understanding that, if a seaman signs foreign articles with a ship that binds him to serve on the ship during those Articles and during that service he becomes incapacitated either due to injury or illness that requires his repatriation, he is contractually entitled to his "unearned wages" until the ship breaks Articles or the seaman becomes fit for duty.

NYDOCS1/303652.1

5. I have processed many claims by seamen for unearned wages. I have calculated the unearned wages in accordance with the Particulars of Engagement and Discharge which the seaman and the Master sign at the Port of Engagement and at the Port of Discharge and which provides for the wage rate in accordance with the Collective Bargaining Agreement.

6. I have never factored overtime into any calculation of unearned wages, nor do I know anyone in the industry who has factored overtime as a matter of practice into the calculation of unearned wages.

7. On October 30, 2006, Mr. Padilla and the Master of the MAERSK ARKANSAS signed the Particulars of Engagement and Discharge at the Port of Salalah which provided for wages of $101.73 per day in accordance with the Standard Freightship Agreement monthly rate for chief cooks of $3,051.90 per day divided by 30 days. He was discharged and repatriated from the Port of Salalah on November 6, 2006 and signed the Particulars of Engagement of Discharge on that date.

8. After being repatriated, Mr. Padilla was paid unearned wages at the rate stipulated in the Particulars of Engagement and Discharge (in addition to maintenance payments) from November 7, 2006 until February 26, 2007 when the ship broke Articles.

NYDOCS1/303652.1

Page 4

7. In the case of Mr. Padilla, I processed his claim for unearned wages. He was paid unearned wages from November 7, 2006, until February 26, 2007, when the voyage ended. His rate was $101.73 per day which is the rate agreed to in the Particulars of Engagement and Discharge This is the correct calculation of unearned wages and it is the way that unearned wages have been paid during the time that I have been processing unearned wage claims.

**WHEREFORE**, your affiant respectfully requests that the Court deny plaintiff's motion for summary judgment.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct:

Dated: June 10, 2008

_____
CAROL BERGER

NYDOCS1/303652.1