# EXHIBIT "3"

512-07/JJW
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Defendant
MAERSK LINE LIMITED
80 Pine Street
New York, New York 10005
(212) 425-1900
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

| | |
|---|---|
| JOHN PADILLA, | Case No.: 1:07-CV-03638-PKL |
| Plaintiff, | |
| - against - | **DECLARATION PURSUANT** |
| MAERSK LINE, LIMITED. and/or UNITED STATES, | **TO 28 U.S.C. §1746** |
| Defendants. | |

------------------------------------------------------x

**CATHERINE O'CONNELL**, declares under penalty of perjury under the laws of the United States of America that the following is true and correct:

1.  I am the Jones Act Claims Manager for MAERSK LINE, LIMITED, the owner of the M/V MAERSK ARKANSAS the United States Flag Ship on which John Padilla was employed in November, 2006. I am handling the within claim by John Padilla to recover overtime wages in addition to the unearned wages he has already been paid.

2.  I was not in charge of Mr. Padilla's claim, when he was repatriated from the MAERSK ARKANSAS. His claim was handled by another claims person, Carol Berger who was a claims manager for MAERSK LINE LIMITED in Norfolk,

NYDOCS1/304024.1

Page 2

Virginia. I have reviewed the papers in Ms. Berger's file in connection with this claim and it is my belief that Carol Berger handled Mr. Padilla's claim in accordance with the long standing policies of MAERSK LINE LIMITED and in accordance with the applicable Collective Bargaining Agreement known as the Standard Freightship Agreement to which MAERSK LINE LIMITED and Mr. Padilla's union, the Seafarers International Union, are parties. Attached as Exhibit "A" is the Standard Freightship Agreement in effect in November of 2006.

3. I have been managing Jones Act Claims for MAERSK LINE, LIMITED for sixteen (16) years. It is my understanding that when a Jones Act Seaman is injured or becomes ill while in the service of the ship he is entitled to maintenance which is a daily subsistence rate governed by the Standard Freightship Agreement and to cure which is payment of the medical expenses related to the injury or illness which is payable to the point that the seaman reaches maximum medical cure.

4. It is also my understanding that, if a seaman signs foreign articles with a ship that binds him to serve on the ship during those Articles and during that service he becomes incapacitated either due to injury or illness that requires his repatriation, he is contractually entitled to his "unearned wages" until the end of the voyage or until the ship breaks Articles.

Page 3

5.    I have processed hundreds of claims by seamen for unearned wages. I have calculated the unearned wages in accordance with the Particulars of Engagement and Discharge which the seaman and the Master sign at the Port of Engagement and at the Port of Discharge and which provides for the wage rate in accordance with the Collective Bargaining Agreement.

6.    It is not my practice to factor overtime into any calculation of unearned wages, and I do not know anyone in the industry who, as a matter of practice, has factored overtime into the calculation of unearned wages. There are certain instances when I enter into negotiations with a seafarer to settle his Jones Act claim, that I will recommend to the company that overtime be included in unearned wages as an inducement for the Seafarer to settle, but this is a matter of discretion and not a matter of right. If there is no intention to negotiate a settlement with the seafarer, then the seafarer's unearned wages include only straight time wages and do not include overtime wages.

7.    On October 30, 2006, Mr. Padilla and the Master of the MAERSK ARKANSAS signed the Particulars of Engagement and Discharge at the Port of Salalah which provided for wages of $101.73 per day in accordance with the Standard Freightship Agreement monthly rate for chief cooks of $3,051.90 per day divided by 30 days. He was discharged and repatriated from the Port of Salalah on

November 6, 2006 and signed the Particulars of Engagement of Discharge on that date. Attached as Exhibit "B" is a copy of the Particulars of Engagement and Discharge executed by Mr. Padilla and the Master of the MAERSK ARKANSAS at the Port of Salalah which was both the Port of Engagement and Discharge.

8. After being repatriated, Mr. Padilla was paid unearned wages at the rate stipulated in the Particulars of Engagement and Discharge (in addition to maintenance payments) from November 7, 2006 until February 26, 2007 when the ship broke Foreign Articles. Attached as Exhibit "C" are copies of Vouchers which set forth the payments of unearned wages and maintenance and cure paid to Mr. Padilla while the ship was on foreign articles.

9. In the case of Mr. Padilla, Carol Berger processed his claim for unearned wages. He was paid unearned wages from November 7, 2006, until February 26, 2007, when the voyage ended. See Exhibit "C." His rate was $101.73 per day which is the rate agreed to in the Particulars of Engagement and Discharge and in accordance with the Collective Bargaining Agreement. This is the correct calculation of unearned wages and it is the way that unearned wages have been paid for the sixteen (16) years that I have been processing unearned wage claims.

NYDOCS1/304024.1

**WHEREFORE**, your declarant respectfully requests that the Court deny plaintiff's motion for summary judgment.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct:

Dated: _June 12_, 2008

_____
CATHERINE O'CONNELL